**In the Matter of E.D.N., a Child.**

**No. 1931.**

Court of Appeals of Texas,
Corpus Christi.

May 20, 1982.

Robert B. Whitaker, Victoria, for appellant.

Hon. Knute L. Dietze, Dist. Atty., Victoria, for appellee.

Before BISSETT, YOUNG, and GONZA-
LEZ, JJ.

OPINION

YOUNG, Justice.

E. D. N. seeks reversal of an order of a
Juvenile Court waiving jurisdiction over
him and transferring him to the district
court for criminal proceedings. We affirm.

The appellant, who was 16 years old at
the time, was arrested on the charge of
burglary on January 9, 1981. After being
informed of his rights by a magistrate's
warning as required by Tex.Fam.Code
§ 51.09 (Vernon Supp.1982), he signed a
statement acknowledging his participation
in the burglary. He disclosed that he was a
part of a group that broke into a home,
while the owners were away, and stole
property including valuable silverware.
Besides this statement, the police gathered
other evidence linking E.D.N. to the crime.

When the district attorney sought by mo-
tion to have the matter transferred to dis-
trict court, the Juvenile Court judge there-
upon ordered a psychiatric report and com-
plete diagnostic study and later held a hear-
ing as directed by Tex.Fam.Code Ann.
§ 54.02(d) & (e) (Vernon 1975). This infor-
mation revealed that E.D.N. was born on
April 22, 1964, and was one of four children.
His mother worked, but his father was un-
employed due to a recent hand injury,
which required hospitalization during De-
cember of 1980. The appellant had never
been much trouble to his parents and spent
most of his time at home. His parents and
teachers characterized him as slightly im-
mature and as a follower of others. He had
always lived with his parents except for
three weeks spent with the Job Corps in
September of 1980. From September to
the date of his arrest he neither attended
school nor worked. Instead, he depended
on his parents' support and began spending
more time with a 29 year-old aunt, who
used drugs. His aunt introduced him to
Preludin, an amphetamine, which he began
using. In order to supply a habit, which
cost from $50 to $80 per day, he and his
aunt began to commit burglaries. He told
the probation officer who interviewed him
that his aunt convinced him to become in-
volved with drugs and burglaries. There is
evidence that his older brother was also
involved in these activities. At the time of
the interview, the probation department
had referrals for 10 other burglaries occur-
ring in December of 1980, and January of
1981, in which E.D.N. participated. He con-
cealed these activities from his parents, who
saw no harm in his spending time with an
aunt.

Dr. Calhoun, who examined E.D.N. for
the psychiatric report, found the appellant
to be of average intelligence and sophistica-
tion with clear thought processes and stable
moods. From his evaluation, the doctor
concluded that E.D.N. was immature for his
age and estimated his maturity level to be
equivalent to a 16 year-old or somewhat
less. He also found that E.D.N. was psy-
chologically addicted to amphetamines and
that a lifelong effort similar to that re-
quired for members of Alcoholics Anony-
mous would be necessary for his rehabilita-
tion. Dr. Calhoun described the programs
available for the treatment of youthful and
adult drug abusers and concluded that the
best disposition of the case would be to
treat E.D.N. on the juvenile level.

The probation officer who interviewed
E.D.N. testified that he was cooperative
with her. He told her that he knows what
he did was wrong and understands the rea-
sons for his arrest. She also told the court
that if it retained jurisdiction and found
E.D.N. delinquent, it could commit him to
the Texas Youth Council or place him on
probation only until he reached the age of
18. She did not express an opinion on the
proper disposition of the case.

In two points of error, the appellant
claims that the decision of the Juvenile
Court is contrary to the great weight and
preponderance of the evidence and that
there is insufficient evidence to support the
judgment. In reviewing factual insuffici-
ency points, we must consider the entire
record to determine whether the evidence
supporting the finding is so weak or the

evidence to the contrary is so overwhelming that the finding should be set aside. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

In a juvenile court transfer proceeding, the burden is upon the prosecuting attorney to present evidence which will form the basis of the court's decision. *B.R.D. v. State*, 575 S.W.2d 126, 131 (Tex. Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). The purpose of the proceeding is to determine whether it is in the best interest of the child and of society to retain jurisdiction in the Juvenile Court or to transfer him to district court for adult criminal proceedings. *B.R.D. v. State*, supra at 131. To facilitate this decision, the legislature has provided criteria for the court to consider. Tex.Fam.Code Ann. art. 54.02(f), supra, sets forth the elements for consideration by the court in its decision to waive jurisdiction and transfer the case for criminal proceedings:

" * * *

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) whether the alleged offense was committed in an agressive and premeditated manner;

(3) whether there is evidence on which a grand jury may be expected to return an indictment;

(4) the sophistication and maturity of the child;

(5) the record and previous history of the child; and

(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.
* * * "

While the court must consider all of these factors, it need not find that they have all been established. *L.M. v. State*, 618 S.W.2d 808–813 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *P.G. v. State*, 616 S.W.2d 635, 639 (Tex.Civ.App.—San Antonio 1981, no writ). In order to transfer the case, the trial court must conclude that the seriousness of the offense or the background of the child and welfare of the community requires criminal proceedings. *J.D.P. v. State*, 609 S.W.2d 868, 870 (Tex.Civ.App.—Texarkana 1980, no writ); Tex.Fam.Code Ann. § 54.02(a)(3), supra. If the evidence establishes enough of the factors in subdivision (f) to convince the trial court that a transfer is in the best interest of the child and community, we will not disturb that order.

In the case before us, the trial court made findings on five of the six factors.[1] Since the offense involved property, no finding was made on the first factor. Although he claims that the evidence taken as a whole will not support the trial court's action, appellant does not discuss, nor is there any basis in the record for disputing findings that the offense was committed in a premeditated manner and that there is evidence upon which the Grand Jury may return an indictment. Appellant focuses on the court's evaluation of his sophistication and maturity and of the unlikelihood of his rehabilitation by means available to the Juvenile Court.

The testimony regarding sophistication and maturity revealed that the appellant's maturity is below average for his age group. Only one person attempted to quantify the actual maturity of the appellant, and his conclusion was that E.D.N.'s maturity approximated that of a person one year younger than himself. Dr. Calhoun

---

1. "The reason for this waiver of jurisdiction and transfer are that the offense was a serious offense against property; that the offense was committed in a premeditated manner; that there exists evidence upon which the Grand Jury may return an indictment; that the child is of sufficient sophistication and maturity to understand his acts, their consequences, and the legal proceedings pending. The Court finds that the protection of the public requires that criminal action be instituted; that inadequate protection of the public, the unlikelihood of rehabilitation of the child by use of the procedures of the Juvenile Court, and the seriousness of the offense and background of the child requires criminal proceedings for the welfare of the community."

assessed his sophistication as average, found his intelligence to be above average, and did not perceive any major mental or emotional disturbances. There is nothing in the statute authorizing transfer which requires a finding that the juvenile have sophistication and maturity on a par with other members of his age group. Since the statute permits transfer of 15 year-olds, it is illogical to conclude that a juvenile with the maturity of a 16 year-old may not be transferred simply because his biological age is nearly 17 (at the time of the hearing). The purpose of an inquiry into the mental ability and maturity of the juvenile is to determine whether he appreciates the nature and effect of his voluntary actions and whether they were right or wrong. *L.W.F. v. State*, 559 S.W.2d 428, 431 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.). In his interview with the probation officer, appellant revealed his comprehension of his acts and their wrongfulness. The record contains no evidence that appellant lacked this understanding or that he would be unable to assist his attorney in his defense. We hold that the trial court's finding regarding sophistication and maturity is supported by sufficient evidence.

The remaining findings concerning the rehabilitation and background of the juvenile and the protection of the public are interrelated. The appellant made much of the fact that prior to the time the offenses were committed, his father was hospitalized, and, therefore, unable to provide parental supervision. But, the father was absent only a few weeks. His prior presence in the home did not prevent his son from quitting school or the Job Corps, nor did he insist upon his son finding a job to contribute to the family income. The evidence shows that an older brother, who lived in the same house and an aunt who lived nearby, were deleterious influences on the boy. From the testimony, the trial court was entitled to infer that continued use of drugs would lead the appellant to commit additional offenses in order to finance his habit. Dr. Calhoun stated that recovery from this habit would require a protracted time period; but, the record reflects that

the juvenile court would lose jurisdiction over the boy within 13 months of the hearing if the transfer were denied. All of these facts are a sufficient basis for a conclusion by the trial court that efforts toward rehabilitation of the appellant as a juvenile would fall far short within the allotted time period and that the result would ultimately jeopardize the welfare of the community. See *Q.V. v. State*, 564 S.W.2d 781, 782 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.). We hold that there is no error in the conclusion of the trial court that rehabilitation of the appellant and protection of the public would be inadequate if he were left within the juvenile system. We overrule both of appellant's points of error.

The judgment of the trial court is affirmed.